GEORGE F. CALLIGAN *et al.* Appellees, *vs.* ALICE F. CALLI-
GAN *et al.*—(THE NATIONAL FIRE INSURANCE COM-
PANY, Appellant.)

*Opinion filed June 18, 1913.*

1. DEEDS—*extent of presumption that a deed was delivered on its date.* Where there is no statute making the acknowledgment of a deed requisite to its operation as a conveyance, it is presumed, in the absence of evidence to the contrary, that the deed was delivered on its date notwithstanding the certificate of acknowledgment bears a later date.

2. SAME—*when deed cannot be presumed to have been delivered on its date.* The statute expressly makes the acknowledgment an, essential element of a release of homestead unless possession is abandoned or given in pursuance of the deed, and hence if the acknowledgment to a quit-claim deed containing a release of homestead bears date later than the date of the deed and the evidence shows that the possession of the premises was not abandoned or given in pursuance of the deed, there is no presumption that the deed was delivered on its date, but it will be presumed, in the absence of proof to the contrary, that it was delivered on the date the acknowledgment was taken.

3. SAME—*acknowledgment not essential to operation of deed as a conveyance unless made so by statute.* Unless the statute makes an acknowledgment requisite to the validity of a deed the delivery of a deed without an acknowledgment is good and will pass title, as in such case the certificate of acknowledgment is merely evidence of the execution of the deed by the grantor and may be attached to the deed either before or after its delivery.

4. SAME—*effect where grantor makes deed of assignment after making deed of trust.* Where the owner of the fee makes a trust deed to secure a note and subsequently makes a deed of assignment for the benefit of creditors, the grantees in the deed of assignment take the equitable title subject to the trust deed, and by their quit-claim conveyance to an assignee in bankruptcy appointed by the court the latter takes the equitable title which they held, but only in trust for the purpose of applying the proceeds for the benefit of creditors.

5. SAME—*equitable title held by an assignee in bankruptcy revests when bankruptcy proceedings terminate.* Where an assignee in bankruptcy holds the equitable title to real estate of the bankrupt at the time the bankruptcy proceedings are terminated with-

out having had to convey the property to obtain the proceeds for the creditors, the equitable title so held by him re-vests in the former bankrupt by operation of law and no conveyance by him is necessary, and as he has no interest, individually, his conveyance after the title has re-vested in the bankrupt by operation of law conveys nothing.

APPEAL from the Circuit Court of Peoria·county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

JUDSON STARR, for appellant.

GEORGE K. BEASLEY, (CHESTER F. BARNETT, guardian *ad litem,*) for appellees.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

On January 20, 1909, George F. Calligan, one of the appellees, filed a bill in the circuit court of Peoria county for the partition of a lot in the city of Peoria, alleging that his father, Daniel J. Calligan, was at the time of his death, on September 18, 1886, the owner in fee simple of said lot, and that by reason of the death of Daniel J. Calligan intestate, and by reason of the death of certain of his children subsequent thereto, complainant and certain other descendants of Daniel J. Calligan are now the owners of said lot as tenants in common, subject to the dower of Elizabeth E. Calligan, the widow of Daniel J. Calligan, except that the interests of the children and heirs of Edward G. Calligan, who was a son of Daniel J. Calligan, are subject to the rights of the National Fire Insurance Company of Hartford, Connecticut, the holder and owner of the master's certificate of purchase hereinafter mentioned. The National Fire Insurance Company answered the bill, denying that Daniel J. Calligan was at the time of his death the owner of the premises in controversy, and alleging that at the time of the death of Daniel J. Calligan his wife, Elizabeth E.

Calligan, was the owner in fee simple of the lot, and that by subsequent conveyances and court proceedings, it, the National Fire Insurance Company, became the holder and owner of a certificate of purchase entitling it to a deed to the premises, by virtue of which it has, since the filing of the bill herein, received a deed to the lot, and that it, the National Fire Insurance Company, is now the owner of said lot. The decree entered in the cause finds the rights of the parties to be as alleged in the bill, except it finds that the National Fire Insurance Company is the owner of an undivided interest in fee of the value of $1000, and is also the owner of an undivided one-fourth of the remainder after taking out the $1000 interest, and that the interest of each of the other alleged tenants in common, except the children of Edward G. Calligan, is a specified undivided part of the remainder after taking out the $1000 interest of the National Fire Insurance Company in the premises. The decree, after finding the interests of the respective parties, directs certain persons, as commissioners, to make partition of the premises in accordance with the rights of the parties as fixed by the decree. The National Fire Insurance Company has prosecuted this appeal to reverse that decree.

The question for determination in this case is whether Daniel J. Calligan was at the time of his death the owner of the lot in controversy, except an undivided interest of the value of $1000 therein, or whether his wife, Elizabeth E. Calligan, had obtained the entire title to said lot prior to the death of her husband. The chancellor found that at the time of the death of Daniel J. Calligan, Elizabeth E. Calligan was the owner in fee of an undivided interest in said lot of the value of $1000 and that Daniel J. Calligan was the owner in fee of the remainder, and that by reason of his death, intestate, such remainder descended to his heirs-at-law, being his three children and one grandchild, subject, however, to the dower rights of Elizabeth E. Calligan. Appellant contends that this finding is contrary to the evi-

dence in the case, and that the court should have found, from the evidence in the record, that Elizabeth E. Calligan was the sole owner in fee of the lot at the time of her husband's death, and that appellant has succeeded to all her right, title and interest.

Daniel J. Calligan became the owner of the said lot on August 25, 1868, when he received a deed therefor from George W. H. Gilbert and wife. On February 15, 1878, he, together with his wife, executed and delivered to John A. McCoy, as trustee, a trust deed conveying the premises to McCoy to secure a note for $4000, payable to the Second National Bank of Peoria. On February 18, 1878, Daniel J. Calligan executed and delivered to Richard H. Whiting, Andrew J. Hodges and Henry B. Hopkins a deed of assignment, thereby assigning and conveying to them in trust, for the benefit of his creditors, all his property, real and personal, including the premises in controversy, except such portion of his property as was exempt by law from levy and sale. His wife did not join in this deed of assignment. Thereafter, on May 29, 1878, Whiting, Hodges and Hopkins, as assignees of Daniel J. Calligan, executed and delivered to Elliott Callender, assignee in bankruptcy of Daniel J. Calligan, a quit-claim deed conveying the real estate in controversy. This deed contained the following recital: "This deed is made in compliance with an order of the United States District Court for the Northern District of Illinois in the matter of D. J. Calligan in bankruptcy, requiring said grantors, as assignees of said Calligan, to convey to said assignee in bankruptcy all property held by them as such assignees." Thereafter, by a deed dated July 3, 1878, acknowledged September 4, 1878, and recorded October 7, 1878, Daniel J. Calligan and Elizabeth E. Calligan, his wife, conveyed and quit-claimed to the Second National Bank of Peoria the lot in question. This deed recited that the consideration for the conveyance thereby made was the full satisfaction and discharge of the note for $4000 held

by the bank, and which was secured by the trust deed to John A. McCoy above referred to. For a long period of time prior to the date of this deed of July 3, 1878, Daniel J. Calligan, together with his wife and family, had occupied the premises as a homestead, and they continued to reside thereon until Calligan's death, in 1886. The deed to the Second National Bank contained a release and waiver of the right of homestead both in the body of the deed and in the certificate of acknowledgment attached thereto.

On August 2, 1878, the United States District Court for the Northern District of Illinois entered the following order in the matter of Daniel J. Calligan, bankrupt: "It appearing from the register's report and the receipt of William H. Bradley, clerk, and the receipts of creditors filed herein, that said bankrupt has fully complied with all the conditions of the composition proceedings herein, it is thereupon ordered by the court that Elliott Callender, assignee herein, turn over all the property and assets belonging to said bankrupt's estate remaining in his hands, to the said Daniel J. Calligan." On the same day the United States District Court also entered another order in said matter, as follows: "On reading the register's final report upon the composition herein, it is ordered that the assignee of said estate turn over the assets in his hands to said bankrupt." These are the only orders entered by the United States District Court in the bankruptcy proceedings introduced in evidence in this case, and the only other proceeding here shown to have been taken therein, other than that shown by the recital in the deed from Whiting, Hodges and Hopkins, as assignees, to Elliott Callender, assignee in bankruptcy, was the filing of a report on August 5, 1878, in the United States District Court, by Elliott Callender, assignee in bankruptcy, in which said assignee shows his receipts and disbursements and the balance of cash on hand, and reports that in pursuance of the order of August 2, 1878, he paid and delivered to Calligan all the balance of

cash on hand and all the books, accounts, goods, chattels and property remaining in his hands as assignee. No mention is made in this report of the real estate in question.

The record further discloses that on October 7, 1878, there were executed, acknowledged and recorded four instruments affecting the title to the real estate in controversy, as follows: A quit-claim deed from the Second National Bank of Peoria to Eunice Elizabeth Calligan; a deed from John A. McCoy, trustee, to Eunice Elizabeth Calligan, releasing the trust deed of February 15, 1878, and conveying the title to her; a quit-claim deed from Elliott Callender to Daniel J. Calligan; and a trust deed from Eunice Elizabeth Calligan, in her own right, and Daniel J. Calligan, her husband, conveying the premises to Samuel S. Winn in trust to secure a note for $2500, payable to John Winn. These four instruments, together with the above mentioned deed from Daniel J. Calligan and wife to the Second National Bank of Peoria, were filed for record at the same time. The trust deed of October 7, 1878, to Winn was released on October 7, 1881, and on the latter date Daniel J. Calligan joined with his wife in another trust deed to John C. Proctor, as trustee, to secure a note for $2500.

After the death of Daniel J. Calligan, in 1886, his widow, under the name of Elizabeth E. Calligan, continued to deal with the lot in question as her property, mortgaging the same to secure notes executed by her and conveying the same by deed, as hereafter shown. On May 18, 1896, she conveyed the lot by warranty deed to her son, Edward G. Calligan. On July 22, 1898, Edward re-conveyed the premises by quit-claim deed to his mother, who on the same day executed a contract, which was not recorded, agreeing to re-convey the premises to Edward upon his making certain payments aggregating $8000. Thereafter, on May 22, 1903, Elizabeth E. Calligan mortgaged the lot to Elliott Callender to secure a note for $3000, and four days later

conveyed the lot to Edward G. Calligan by warranty deed. Shortly afterwards Edward executed and delivered to his mother a mortgage on the lot to secure the payment of $6000 to her, this mortgage reciting that it was made subject to the prior mortgage given to Elliott Callender to secure a note for $3000. Afterwards, and prior to November 30, 1908, Edward G. Calligan died, leaving his widow and two children, and Elizabeth E. Calligan instituted suit in the circuit court of Peoria county against Edward's widow and children to foreclose the $6000 mortgage. Proceedings were had in that suit which resulted in a decree on November 30, 1908, foreclosing the $6000 mortgage held by Elizabeth E. Calligan and the $3000 mortgage then held by appellant, and a sale was had on December 29, 1908, at which John W. Culbertson became the purchaser, and a certificate of purchase was issued to him by the master, which he afterwards assigned to appellant. The time for redemption from the sale having expired after the bill for partition herein was filed, appellant, as the holder of the certificate of purchase, on March 30, 1910, obtained a deed from the master conveying the lot in controversy to appellant.

The principal disagreement between appellant and appellees relates to the validity of the deed from Daniel J. Calligan and Elizabeth E. Calligan, his wife, to the Second National Bank of Peoria, which purported to convey the lot in controversy. Appellees take the position that as this deed was dated July 3, 1878, it must be presumed, in the absence of proof to the contrary, that it was executed and delivered on that date, and as the bankruptcy proceedings were then pending, and as all of Calligan's right, title and interest in the premises, except the homestead estate, had before July 3, 1878, vested in the assignee in bankruptcy, the deed to the Second National Bank was ineffective to convey anything except the homestead estate, being an undivided interest of the value of $1000. We have frequently

held that, in the absence of proof to the contrary, the presumption is that a deed was executed and delivered on the day it bears date, and this notwithstanding the deed may not have been acknowledged until a subsequent date. (*Deininger* v. *McConnel*, 41 Ill. 227; *Jayne* v. *Gregg*, 42 id. 413; *Darst* v. *Bates*, 51 id. 439; *Hardin* v. *Osborne*, 60 id. 93; *Hardin* v. *Crate*, 78 id. 533; *Smiley* v. *Fries*, 104 id. 416; *Lake Erie and Western Railroad Co.* v. *Whitham*, 155 id. 514; *Walker* v. *Doane*, 131 id. 27.) In none of those cases, however, was the acknowledgment to the instrument there under consideration an essential part thereof or necessary to render the instrument effective as a conveyance. Unless an acknowledgment is by statute made a requisite to the validity of the deed, a delivery without acknowledgment will be good and will convey the title of the grantor. (*Doe* v. *Miles*, 2 Scam. 315; *Roane* v. *Baker*, 120 id. 308.) In such cases the certificate of acknowledgment is no part of the instrument of conveyance but is merely evidence of the execution of the instrument by the grantor, (*Osgood* v. *Blackmore*, 59 Ill. 261,) and may be attached to the instrument either before or after its delivery. Hence the presumption that an instrument which is not required by statute to be acknowledged in order to convey title was delivered on the day it bears date is not rebutted by the fact that it appears from the certificate of acknowledgment that it was acknowledged at a subsequent time. In the case of a deed conveying a homestead, however, there can be no presumption that the deed was delivered on the day it bears date if the date of the deed is prior to the date of the acknowledgment. The homestead estate can only be conveyed by following the method prescribed by the statute for such conveyances. Section 4 of the Homestead act of 1873, which was in force at the date of the deed from Daniel J. Calligan and wife to the Second National Bank and at the time that instrument was acknowledged, provides that no release, waiver or conveyance

of the estate of homestead shall be valid unless the same be in writing, subscribed by the householder and his or her wife or husband, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or possession be abandoned or given pursuant to the conveyance. By the express terms of this statute an acknowledgment is made a requisite to the validity of a conveyance of the estate of homestead unless possession be abandoned or given pursuant to the conveyance, and without such acknowledgment the attempted conveyance is void and does not operate to convey the estate of homestead. (*Gage* v. *Wheeler,* 129 Ill. 197; *Ogden Building Ass'n* v. *Mensch,* 196 id. 554; *Gillam* v. *Wright,* 246 id. 398.) This statute makes the certificate of acknowledgment a part of the instrument of conveyance, and until the instrument has been acknowledged it has not been fully executed. In effect it is similar to the statute which was in force in the early history of this State prescribing the manner and before whom a deed purporting to convey the estate of a married woman should be acknowledged, and in considering the effect of that statute in *Mariner* v. *Saunders,* 5 Gilm. 113, it was said that "the certificate of acknowledgment of a deed from a *feme covert* to convey her own lands is as much an essential part of the execution of the deed as her seal or signature."

It will not be presumed that a deed was delivered before it was executed, and the acknowledgment of an instrument conveying a homestead being an essential part of the execution of the instrument, so far as the conveyance of the estate of homestead is concerned, it must be presumed, in the absence of proof to the contrary, that it was delivered on the date of the acknowledgment. Hence it must be presumed that the instrument purporting to convey the premises here in controversy to the Second National Bank was delivered by Daniel J. Calligan and wife to the bank on September 4, 1878, being the date of its acknowledg-

ment, as it purported to and did convey an estate of homestead and the proof shows that possession was not abandoned or given pursuant to the conveyance.

Appellees concede that the homestead estate was conveyed by this instrument, and the chancellor so found, but contend that the title to the.excess over the homestead did not pass, this contention being evidently based upon the theory that as the deed, so far as it purported to convey the excess, was valid without acknowledgment, it must therefore be presumed, so far as the excess is concerned, that the deed was delivered on July 3, 1878. If it be presumed that, so far as the excess is concerned, the deed was delivered on July 3, 1878, yet it must also be presumed that the same instrument was again delivered on September 4, 1878, and upon such re-delivery all the right, title and interest which the grantors then had in the premises passed to their grantee. *Doe* v. *Howland,* 8 Cow. 277; *Osterhout* v. *Shoemaker,* 3 Hill, 513.

The deed from Calligan to the Second National Bank operated to convey all the right, title and interest which he had in the lot on September 4, 1878.

By the trust deed of February 15, 1878, the legal title to the premises vested in John A. McCoy, as trustee, and there remained until McCoy, as trustee, on October 7, 1878, by deed conveyed the legal title to Eunice Elizabeth Calligan, the wife of Daniel J. Calligan. (*Coryell* v. *Klehm,* 157 Ill. 462.) After executing and delivering this trust deed Daniel J. Calligan retained and held the equitable title to the lot, subject to the rights of the Second National Bank as the holder of the note secured by the trust deed, until February 18, 1878, when he executed and delivered to Whiting, Hodges and Hopkins, as assignees, a deed of assignment, which operated to convey Calligan's equitable title to all the excess over the homestead estate. (*Welch* v. *Dutton,* 79 Ill. 465; *Torrence* v. *Shedd,* 156 id. 194.) On May 29, 1878, these assignees conveyed all the title which

they had received by Calligan's deed of assignment to Callender, as assignee in bankruptcy, and by this conveyance Callender, as assignee in bankruptcy, became vested with the equitable title to all the excess over the homestead estate, subject to the rights of the Second National Bank as the holder of the note secured by the trust deed to McCoy, but only in trust for the purpose of applying the proceeds, in case of sale, to the payment of the bankrupt's creditors. So far as the record in this case discloses, the bankruptcy proceedings were concluded on August 5, 1878, by the payment of all claims against Calligan under a composition with creditors in the bankruptcy proceedings, and the trust upon which Callender, as assignee in bankruptcy, held the equitable title to the lot thereupon terminated. Thereupon Daniel J. Calligan became re-invested with all the equitable title to the lot, subject only to the rights of the Second National Bank, no conveyance from the assignee being necessary to re-invest him with such title. (*Burton* v. *Perry,* 146 Ill. 71.) Having become re-invested with the equitable title to the whole of the lot prior to September 4, 1878, the deed from Calligan and wife to the Second National Bank operated to convey not only the equitable title to the homestead, but also the equitable title to the excess, and the deed from the bank to Eunice Elizabeth Calligan on October 7, 1878, vested the equitable title to the lot in her freed from the rights of the bank, as the holder of the note secured by the trust deed to McCoy. Thereupon Mrs. Calligan had the right to require a conveyance of the legal title from McCoy, and such conveyance was made on October 7, 1878, and she then became invested with both the legal and equitable title to the whole lot. *Coryell* v. *Klehm, supra.*

The quit-claim deed of October 7, 1878, from Callender to Daniel J. Calligan conveyed nothing, as Callender individually never had any title to the premises, and the equitable title which he had held as assignee in bankruptcy had previously re-vested in Calligan by operation of law. No

subsequent conveyance to Daniel J. Calligan appearing from the evidence, it necessarily follows that he was not seized of any portion of the lot at the time of his death, and his heirs obtained no title thereto by descent from him.

The conveyances subsequent to October 7, 1878, being the date when Mrs. Calligan obtained the title to the lot, show that the appellant is the sole owner of the premises in controversy, and the chancellor should have so found. The decree is therefore erroneous in finding that the heirs of Daniel J. Calligan and their descendants have an interest in the premises, and in ordering partition.

The decree will be reversed and the cause remanded to the circuit court, with directions to enter a decree dismissing the bill for want of equity.

*Reversed and remanded, with directions.*