(No. 32429.—

MICHAEL A. BERIGAN *et al.*, Appellants, *vs.* JOHN L. BERRIGAN *et al.*, Appellees.

*Opinion filed September 17, 1952—Rehearing denied Nov. 17, 1952.*

THOMAS & MULLIKEN, of Champaign, and M. E. NEWELL, of Alton, for appellants.

BUSCH & HARRINGTON, of Champaign, (W. KENNETH PORTER, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is a direct appeal from a decree of the circuit court of Champaign County in a suit wherein the plaintiffs sought to have seven parcels of real estate partitioned and to have a deed conveying two of said parcels to John L. Berrigan and his wife, Edith Phelan Berrigan, two of the defendants, declared null and void. John L. Berrigan counterclaimed asking for specific performance of an oral contract, which relief, if granted, would make him the sole owner of all seven tracts of land. The case was heard by a master who recommended that a decree be entered partitioning five of the seven parcels, decreeing John L. Berrigan and Edith Phelan Berrigan to be the sole owners in fee of the other two parcels by virtue of the deed which the plaintiffs sought to have declared null and void, and dismissing John Berrigan's counterclaim. The report of the master was approved and the court entered a decree as recommended.

The plaintiffs, Michael A. Berigan, Monica Berigan Felter, Gertrude Berigan Wilson, deceased, (here represented by Alonzo E. Wilson, the administrator of her estate,) Joseph B. Berigan, Anna Arenz and Agnes Berigan,

and the defendants John L. Berrigan, Teresa Berigan and Margaret B. Sullivan are all brothers and sisters and the sole heirs-at-law of their uncle, Patrick Berigan, the former owner of all of the real estate embraced in this litigation. Teresa Berigan and Margaret B. Sullivan join here with the original plaintiffs as appellants and ask us to reverse that portion of the decree which declared the disputed deed to be valid and decreed John L. Berrigan and his wife, Edith Phelan Berrigan, the appellees, to be the sole owners in fee of two of the seven parcels of real estate.

Patrick Berigan was past ninety years of age when he died intestate on July 22, 1949. He had been a bachelor all of his life. He was a successful businessman and had accumulated considerable real estate. Included among his holdings were a 160-acre farm in Champaign County and a house and lot in Villa Grove, Illinois. These two parcels of real estate are described in a deed dated February 19, 1948, which recites that Patrick Berigan conveyed and quit-claimed said property to John L. Berrigan and Edith Phelan Berrigan. The sole issue involved in this appeal is the validity of this instrument. In order to fully understand that issue and the contentions of the parties, however, it is necessary that we discuss in some detail certain facts and circumstances surrounding this controversy and the evidence bearing on the execution of the deed.

John L. Berrigan was apparently the relative with whom Patrick Berigan had the closest relation the last two or three years of his life. During the year or two prior to February 19, 1948, John lived in Tolono and Patrick lived in the neighboring towns of Villa Grove or Tuscola. It was John's practice to assist his Uncle Patrick as often as possible in such ways as driving him about to take care of his business, opening his mail and doing other odd jobs to which his uncle could not attend because of his advanced age and failing health. Patrick spent considerable time living in nursing homes and hospitals during this period

and John was his most frequent companion. On February 18 or 19, 1948, John gave up his job in Champaign, and he and Patrick moved to Patrick's home in Villa Grove. At that time John's wife, Edith, was living and teaching school in Wisconsin, but at a later date she too moved into this house and she and John lived with and cared for Patrick until his death.

The evidence makes it quite certain that Patrick Berigan suffered from Parkinson's disease and was in very poor health from at least 1946 until his death, yet despite this poor health, it seems that he was remarkably active for a man of his age and was a dominant person who made up his own mind and was not easily influenced. The evidence is somewhat conflicting as to the soundness of Patrick's mind in late 1947 and the early part of the year 1948. However, on October 27, 1948, the county court of Douglas County found Patrick to be an incompetent person and incapable of managing his property, and, accordingly, a conservator was appointed for him on that date.

The disputed deed, defendants' exhibit 1, appears to bear the date of February 19, 1948, the day or day after John and Patrick moved into the Villa Grove house. It describes the grantees, John and Edith Berrigan, to be of the village of Tolono and describes the Villa Grove house as being the house where the grantor and grantees then lived. The deed is not acknowledged. The grantor's signature is practically indecipherable. John L. Berrigan caused this deed to be recorded in Douglas County on August 15, 1949, and in Champaign County on August 18, 1949, several weeks after Patrick Berigan's death. John Teter testified that he happened to go to the Villa Grove house on February 19, 1948, and while on the porch saw Patrick signing a piece of paper that looked like the deed in question. The same witness further testified that when Patrick came to the door he said: "I just got through giving John a deed for some property, by Judas." Harold C. Jones, a

lawyer acquainted with both John and Patrick, testified that John stated to him that after executing the deed Patrick said: "John, this is yours, if they treat you right you divide this between them, if you want to, if they don't you do what you want with it." John related this to Jones in a conversation had with the witness after Patrick's death on the occasion of John's showing defendants' exhibit 1 to the witness. Harold C. Jones and Melvin Matteson both substantiated a further complicating fact when they testified that there was another deed quite similar to defendants' exhibit 1. This other deed has been lost. Jones testified that he saw this lost deed about a week prior to Patrick's death when it was brought to his office by Matteson, Patrick's conservator, and that he believed that the lost deed and defendants' exhibit 1 were practically alike except that Patrick's signature was far more legible on the lost deed. In an offer of proof, which was refused by the master, the plaintiffs offered to prove by Jones that he would have testified that he told Matteson that he did not believe the lost deed was worth anything because it was not acknowledged and because the signature did not look like the signature of Patrick which he had seen on checks. This witness further testified that when John showed him defendants' exhibit 1, after Patrick's death, John explained that the reason he had had two deeds was because when Patrick signed the first deed, defendants' exhibit 1, the signature was so poor that John thought the deed might not be valid, so he had Patrick sign the lost deed while he guided his hand in order to make it more legible. The witness further stated that John told him at the same time that both of said deeds were signed on the same date and that he had them both ever since. Matteson testified that John Berrigan brought the lost deed to him in July, prior to Patrick's death, and that he took it to show to Jones and then returned it to John prior to Patrick's death.

Several witnesses testified that Patrick, subsequent to February 19, 1948, had made statements to them to the effect that he had taken care of John, or that John had nothing to worry about, or that John was to have the property after his death, or that he had left John the property after his death. James A. Bates testified that in April, 1949, he went to the Villa Grove house where both Pat and John lived and that while John was showing him around the house John opened a dresser drawer in an upstairs room and showed him the deed marked as defendants' exhibit 1. After showing it to him, the witness stated that John put it back in the dresser drawer. John Berrigan himself testified that the deed was kept in a lockbox belonging to him and his wife in a dresser drawer from the date of Patrick's death until the day it was recorded.

The facts of this case are even further complicated by the testimony of Donald Doud, an expert witness employed by the appellants, and the very detailed and elaborate exhibits prepared by him, all of which were transmitted to us with the record. The reason for this testimony springs from the fact that the "8" appearing in the date February 19, 1948, on the deed, seems to have been in part written over some other mark or figure, and from the very illegible character of Patrick Berigan's signature as it appears on the deed. The appellants do not contend that Patrick's signature does not appear on the deed, but rather contend that the deed was not signed until sometime in 1949 after he had been adjudged incompetent on October 27, 1948. Donald Doud testified that he had examined Patrick Berigan's signature as he wrote it on other instruments in the early part of 1948 and also signatures as they were written in 1949 after Patrick Berigan's health had further declined. Exhibits were introduced showing the signature of Patrick as he wrote it during these different periods. This expert witness testified that all of these ex-

hibits had been carefully examined under various types of magnifying instruments and under different lights, and that enlarged photographs and reproductions had been made of these signatures including the one appearing on the disputed deed. The same type of analysis was made of the deed itself. In his testimony Doud gave the opinion that certain parts of the deed were typed at different times than were other parts of the deed because certain words were not in alignment, indicating that the instrument had been taken from the machine and reinserted. He stated that it was his opinion that the loop and beginning of the staff of a figure "9" was written on the deed and then a figure "8" superimposed upon it where the "8" appears in the date February 19, 1948. Doud testified that it was his opinion that the deed was prepared in 1949 and that Patrick Berigan signed the deed in 1949 rather than on February 19, 1948. The master refused to permit the expert to testify as to the specific basis for this opinion, and the court sustained this ruling on hearing of objections to the master's report. However, it is obvious from Doud's testimony taken as a whole, that his opinion that the deed was not signed until sometime in 1949 is based upon his conclusion that the signature on the deed more closely corresponds with signatures written by Patrick Berigan in 1949 than with those written by him in January, February and March of 1948 plus his conclusion that the start of a figure "9" appears under the figure "8" in 1948 on the deed. The appellants argue that because of this possible presence of part of a figure "9" covered by an "8," it can be reasonably inferred that someone dating an instrument in 1949 would naturally be inclined to write the current year 1949 before he consciously realized that it was his purpose and intent to affix a date in the instrument for the previous year 1948, and that he would thus start to write "9" before catching his error and then correct his error by superimposing an "8" on the partially written "9."

The evidence further reveals that from February 19, 1948, the date the deed bears, until his death, Patrick Berigan or his conservator exercised complete dominion and control over the property conveyed by the deed. They sold the grain off the farm, paid the taxes, contracted to have work done on the house in Villa Grove and paid for it. More than a year after February 19, 1948, John Berrigan applied to Patrick's conservator for $56 that he had expended on some repairs on the house which had been conveyed, and was reimbursed in this amount by the conservator.

On the basis of the evidence outlined above, the appellants ask us to hold the deed to be invalid and to overturn the findings of the master, approved by the chancellor, as being against the manifest weight of the evidence. This appeal clearly turns on the validity or invalidity of the disputed deed. The appellants contend that the evidence conclusively establishes that the deed is invalid and that it should be held to be inoperative as a conveyance on one of the following grounds: (1) That a fiduciary relationship existed between Patrick Berigan and John and Edith Berrigan, and that said deed was procured in violation of the principles attending such a relationship; (2) that said deed was signed or delivered, if at all, subsequent to October 27, 1948, at a time when Patrick Berigan was incompetent to execute an effective conveyance; (3) that the deed could not operate as a conveyance because it was never delivered; and (4) that the deed is actually testamentary in character and therefore void because it does not comply with the requisites of the Statute of Wills.

The existence of a fiduciary relationship between a grantor and grantee depends upon all the facts and circumstances of each particular case, and courts of equity have consistently refused to establish any definite bounds to the facts and circumstances out of which the relationship may spring in a given case. (*Staufenbiel* v. *Staufenbiel,* 388 Ill.

511.) The principles to be applied in reaching such a determination are elementary and do not require discussion. The master made a specific finding that the evidence did not show a fiduciary relation to have existed between the grantor and grantees here. It is probable that such a finding was greatly influenced by the testimony of many witnesses that Patrick Berigan was a stubborn man who made up his own mind and was not easily persuaded to change it. We are prompted to state that the facts of this case do present a close question as to the existence or nonexistence of the relationship. It must be remembered, however, that the mere existence of a fiduciary relationship does not of itself invalidate a transaction between the parties involved. The transaction will be sustained despite the existence of the relationship in a case where the grantor had competent and independent advice or where the grantee did not procure the deed by improper methods violative of the duties imposed upon him by the relationship, such as by means attended with circumstances of oppression or overreaching. (*Stasch* v. *Romza*, 387 Ill. 67.) Although it is not shown here that Patrick Berigan had independent advice relative to the transaction in dispute, it is very clear that the record does not disclose any evidence showing that John or Edith Berrigan improperly influenced Patrick into wanting to give them the property or employed improper means to procure the deed. There is no testimony indicating undue influence, oppression or overreaching. Rather, the record seems to bear out the position that Patrick was the moving and dominant force in the decision that John and Edith should have the property; and such readily appears to have been his desire and intent arrived at, from all that appears in the record, out of natural and valuable considerations of affection and indebtedness for many past favors and kind treatment. Thus, even though we might feel somewhat inclined to find that a fiduciary relationship did exist between the grantor and grantees here, the result would be the same

because we would in such case be compelled to hold that the grantees did not violate the obligations imposed by such a relationship and that the relationship was not itself the procuring cause of the conveyance. Accordingly, the finding of the master in this regard will be sustained and the deed held not to fail under any theory embraced within the law of fiduciary relations.

The other three grounds or theories under which the appellants contend the deed must fail, namely, that there was no delivery, that the signing and delivery came after the grantor was adjudged to be incompetent, and that the deed is void as being testamentary in character, present the most difficulty and are all interrelated in the sense that the resolution of one question likely resolves the others. We are here, however, concerned not only with whether there *was* a delivery of the deed but also we are very necessarily concerned with *when* the delivery occurred, because Patrick Berigan was clearly legally incompetent to convey his property after October 27, 1948.

At the outset, it is perhaps best to touch upon the appellants' contention that the deed was not signed or delivered until sometime in 1949 to the extent that such theory is based upon the various words and figures on the deed and their expert witness's interpretive testimony in regard thereto. We have carefully examined the very excellent exhibits prepared by this witness and his testimony. The calibre of his exhibits and his qualifications make it apparent that he is an expert on this subject and that his opinions should be given due weight. The opinions which he advanced are plausible as are the arguments and theories of the appellants based thereon. Yet it must be said that the presence of the "8" superimposed upon the partially written "9," if such is the case, can be explained or argued on many other just as plausible and possible theories consistent with such act having been done on February 19, 1948. The opinion of this witness and the arguments of

appellants that the grantor did not sign the instrument on February 19, 1948, based upon the comparison of the signature appearing on the deed with standards of his signature as written about that date and standards written in the latter portion of 1948 and in 1949, are subject to the same comment. They are plausible and possible, but other explanations consistent with the deed having been signed on February 19, 1948, are just as plausible and possible.

Although the appellants are perhaps correct in stating in their brief that they could find no Illinois case exactly holding that an unacknowledged deed was entitled to a presumption that it was executed and delivered on the day it bears date, we believe that *Calligan* v. *Calligan*, 259 Ill. 52, and the cases there cited, substantially so hold. An acknowledgment is necessary for the conveyance of the estate of homestead but is unnecessary to effectively convey other estates. It is granted that an acknowledgment constitutes additional evidence of the fact of execution and delivery, but it does not follow that this presumption does not obtain as to the conveyance of estates other than homestead when the acknowledgment is lacking. Such is certainly the case when the deed is not incomplete in the sense that the grantor in an unacknowledged deed possessed an estate of homestead. We hold that the deed in question is not incomplete in this sense because Patrick Berigan did not have a homestead estate in the property covered by this deed because of the clear lack of dependence of anyone upon him and because of the nature of the estate which he sought to convey, as will be more thoroughly explained in another portion of this opinion. Certainly the burden was upon the appellants to establish by clear proof that the deed was not executed on the day it bore date. Considering the testimony of other witnesses pointing to the execution date as being February 19, 1948, and the fact that the appellees are aided by the presumption just discussed, it is our judgment that appellants have failed to

sustain that burden, and we are persuaded that the master's finding that Patrick Berigan signed the deed at a time when he was mentally and legally competent to execute a deed is not against the manifest weight of the evidence.

Delivery, in its legal and technical connotation, is a vital part of the execution of a deed and is essential to the operation and validity of the conveyance. We have stated many times that delivery of a deed is strictly a matter of the intention of the grantor as manifested and evidenced by the words, acts and circumstances surrounding the transaction. (*Alexander* v. *American Bible Society,* 407 Ill. 49; *Dry* v. *Adams,* 367 Ill. 400.) Manual transfer of the deed is not indispensable to delivery but is evidence of delivery. The controlling factor in determining the question of delivery in all cases is the intention of the grantor, and this is particularly the case where the grantor makes a voluntary conveyance to grantees who are very naturally the subject of his bounty. In such cases, courts of equity are strongly inclined to carry out this intention unless to do so would run contrary to very convincing evidence or well-established legal principles. (*White* v. *Willard,* 232 Ill. 464.) This tendency to carry out the intention of the grantor because of the relationship of the parties is most evident in the so-called "voluntary settlement cases." Although the facts of this case may not place it exactly in the category of a voluntary settlement as that concept is defined in *Klajbor* v. *Klajbor,* 406 Ill. 513, and *Alexander* v. *American Bible Society,* 407 Ill. 49, the basic rationale of the concept of voluntary settlements is, nonetheless, applicable here.

Standing clear and practically undisputed in this record is the fact that it was the desire and intention of Patrick Berigan to convey some estate to these grantees by this deed. It is admitted that the same liberality is not possible in carrying out the intent of grantors as is possible in the case of testators, yet equity will strive to accomplish this

intent if it can be done without distorting legal principles and disturbing the certainty of real-estate titles.

We believe that the evidence shows that Patrick Berigan intended to make a present grant of a future estate in fee, a future estate to commence at his death and unsupported by any intermediate estate. Under our law it was possible for him to do this, if he carried out his intent by some proper and provable execution. (*Shackelton* v. *Sebree*, 86 Ill. 616; *White* v. *Willard*, 232 Ill. 464; *Craig* v. *Rupcke*, 274 Ill. 626.) There is a great deal of testimony supporting the theory that whatever estate was created was presently created on February 19, 1948, by a deed that was intended to be a fully executed and delivered conveyance as of that date. The statement of Patrick Berigan to John Teter on that date, "I just got through giving John a deed for some property, by Judas," is most persuasive in this regard. Retention of possession of the property and its fruits by Patrick, and seeking and obtaining reimbursement for expenditures made on the property by John, are perhaps interpretable as inconsistent with a present grant of a present estate, but they are not at all inconsistent with a present grant of a future estate in fee to commence upon the death of the grantor.

The question of whether Patrick Berigan was entitled to an estate of homestead becomes immaterial in the case of the creation of such an estate. Consequently, acknowledgment was not essential to the conveyance of such an estate and the deed was in no sense incomplete. Accordingly, appellees are assisted in establishing the delivery of the deed on the date it bears as a presently effective conveyance by certain well-founded presumptions. The deed was in the hands of the grantees and was recorded by them, and in such circumstances there is a presumption that the deed has been delivered on the date it bears, and whoever questions the delivery must assume the burden of

overcoming the presumption by clear and convincing evidence. (*White* v. *Smith,* 338 Ill. 23; *Short* v. *Short,* 409 Ill. 142.) In addition, there is the testimony of James Bates that John Berrigan showed the deed to him prior to the date of Patrick's death. The fact of delivery is thus strengthened by the fact that the grantee had control or at least joint possession of the deed. (*White* v. *Smith,* 338 Ill. 23.) A manual transfer of a deed from the grantor to the grantee is not essential to a valid delivery, especially where there is a close relationship of mutual trust between the parties. (*Dry* v. *Adams,* 367 Ill. 400; *Hoyt* v. *Northup,* 256 Ill. 604.) However, it is evidence of delivery of a presently effective conveyance. This evidence of control of the deed is likewise helpful in determining whether the deed is void as a testamentary disposition. The matter of testamentary disposition in the case of deeds is really in a broad sense a matter of delivery simply put in a different way. If it is decided that the deed is delivered, then it is irrevocable and not ambulatory as is a will. The problem is more acute when we have decided, as here, that the grantor intended to create a future estate to commence at his death. The evidence here of the grantees' control of the deed aids in dispelling the idea that the grantor sought to keep the conveyance ambulatory. But, having decided that the deed was delivered as an immediately effective present grant of a future estate, we simultaneously hold that the deed was irrevocable and not within the power of recall of the grantor and, thus, not void as a testamentary disposition not in conformity with the Statute of Wills. *Craig* v. *Rupcke,* 274 Ill. 626.

For the reasons stated in this opinion, the deed is held to be a valid and effective conveyance of the property described therein and the decree will be affirmed.

*Decree affirmed.*