*In re* APPLICATION OF THE COOK COUNTY COLLECTOR (The People *ex rel.* Edward J. Rosewell, Cook County Treasurer and *ex officio* County Collector, Relator-Appellee, *v.* Albert A. Sharkey, Objector-Appellant).

First District (1st Division)   No. 83—310

Opinion filed August 20, 1984.

Keck, Mahin & Cate, of Chicago (John M. Betts, of counsel), for appellant.

Rick Halprin, of Chicago Park District, of Chicago (Leslie P. Liss, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

The Cook County collector made application for judgment and order of sale against certain real estate for nonpayment of 1974 taxes.

The objector-appellant, Albert A. Sharkey (hereafter referred to as the taxpayer), owns the real estate located within the boundaries of the Chicago Park District. The taxpayer paid in full and under protest the 1974 park district real estate tax extended against his property. Thereafter, the taxpayer duly filed objections to the 1974 tax levy of

the district. At the hearing in the trial court, the taxpayer withdrew all his objections except objection VII, objection X and objection XIII. The trial court overruled all three objections, and the objector has appealed the trial court's final judgment overruling objections VII and X.

The facts as stipulated by the parties are summarized, and it appears that the Chicago Park District adopted its tax levy ordinance for the year 1974 on March 12, 1974. On that date, the maximum rate permitted for the corporate fund per $100 of the 1974 equalized assessed value of all taxable property within the district was .47. (Ill. Rev. Stat. 1973, ch. 105, par. 333.19.) However, the 1974 equalized assessed value of the taxable property within the district was not known on that date. The last known equalized valuation was for the year 1972. Therefore, the district estimated the maximum amount it could levy for the corporate fund for 1974 by applying the maximum permissible rate (.47) to the 1972 equalized valuation ($13,175,351,612) to arrive at the amount of $61,924,153. The district thereupon levied $61,924,153 for the corporate fund by the 1974 tax levy ordinance adopted on March 12, 1974. When the 1974 equalized valuation became known in mid-1975, it turned out to be less than the equalized value for 1972 ($12,297,365,927 for 1974 versus $13,175,351,612 for 1972).

After the levy ordinance was adopted, section 19 of "An Act in relation to *** the Chicago Park District" (Ill. Rev. Stat. 1973, ch. 105, par. 333.19) was amended by Public Act 78—1202 to permit a maximum rate of .50 for the corporate fund. The amendment became effective October 1, 1974. Thereafter, the county clerk of Cook County extended corporate fund taxes at the rate of .50 authorized by the amendment to section 19. The county clerk of Cook County scaled back the Cook County portion to $61,472,719, computed by applying the rate of .50 to the 1974 Cook County equalized valuation. Section 19 was also amended to permit a maximum rate of .06 for the aquarium and museum fund. The maximum rate permitted at the time the 1974 tax levy was adopted was .04. The amendment was also effective October 1, 1974, and thereafter, the county clerk extended the rate at .042853.

The facts in respect to objection X are similar to those for objection VII, except that objection X involves the aquarium and museum fund of the district instead of the corporate fund as in objection VII. The issue before this court as to objection X is the same as for objection VII and involves the validity of the amendment to section 19 made by Public Act 78—1202, as applied to the 1974 corporate fund and aquarium and museum fund tax levy. It is claimed that the lawful levy for the corporate fund on March 12, 1974, was $57,797,619 (rate of

.47) and that the excess is $4,126,534, and the excess by applying a rate over .04 for the aquarium and museum fund by virtue of the amendment was $351,194.

The taxpayer maintains that the amendment to section 19 was a curative or validating act passed by the legislature to cure a defect in earlier proceedings to make valid a proceeding that was originally invalid. (*People ex rel. Bauer v. Elmhurst-Villa Park-Lombard Water Com.* (1960), 20 Ill. 2d 139, 169 N.E.2d 350; *People ex rel. Polivka v. Padley* (1930), 340 Ill. 314, 172 N.E. 763.) Thus, the effect of the amendment, when it became effective after adoption of the levy, was an attempt to validate that part of the levy which required rates in excess of the March 12, 1974, maximum permissible rates prescribed by statute. The taxpayer asserts that if there had been no amendment to section 19, the excess of the levy of $4,126,534 and $351,194 would have been illegal and subject to objection. In essence, a clear attempt was presented to make valid a levy that was invalid at the time of its adoption.

■■ ■ The general rules as to curative or validation acts are limited to the validation of a defective exercise of power and do not apply where the power sought to be exercised does not exist at all. The taxpayer asserts that when the Chicago Park District's 1974 tax levy was adopted the district had the power to levy a corporate fund tax requiring a rate of .47 and not .50, and the aquarium and museum tax requiring a maximum rate of .04 and not .042853. The legislature cannot give validity to the exercise of the power to levy when such power did not exist at the time it was purported to have been exercised. *People ex rel. Larson v. Thompson* (1941), 377 Ill. 104, 35 N.E.2d 355; *People ex rel. Batman v. Illinois Central R.R. Co.* (1938), 369 Ill. 432, 17 N.E.2d 25; *People ex rel. Kjellquist v. Chicago, Milwaukee & St. Paul Ry. Co.* (1926), 321 Ill. 499, 152 N.E. 560.

It appears that the trial court considered several cases cited by the taxpayer, *People ex rel. Carr v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* (1925), 316 Ill. 410, 147 N.E. 492, *People ex rel. Orrison v. Wabash Ry. Co.* (1931), 344 Ill. 606, 176 N.E. 767, and *People ex rel. Dooley v. New York, Chicago & St. Louis R.R. Co.* (1939), 371 Ill. 522, 21 N.E.2d 760, and recognized that at first blush such cases might give credence to the taxpayer's position, but that such cases upon closer examination are distinguishable. *Pittsburgh* involved an additional levy by a taxing district, not merely a tax at a higher rate. Furthermore, in *Pittsburgh* the court found that the General Assembly did not intend that the curative act should have any retroactive effect. In *Wabash,* the issue was not the ability of the General Assembly to pass a cura-

tive act, but rather the effect of a town election to lower the tax rate. Finally, *New York, Chicago & St. Louis R.R. Co.* does stand for the proposition that the General Assembly may not vest power to assess taxes in a county through a curative act. However, that case involved an assessment by a county for pauper relief for which the county had no power to assess taxes. The court indicated that all of these cases involved deficiencies of a jurisdictional nature which were so fundamental as to be incapable of validation through a curative act of the General Assembly.

The taxpayer claims that the above cases do not involve curative acts and are not pertinent to the taxpayer's theory of this case on appeal. The taxpayer now argues that, if anything, they support rather than oppose the result sought without setting forth any basis for such a proposition.

Elsewhere, the taxpayer takes issue with three other cases which the trial court held "clearly stand for the proposition that the General Assembly can by curative acts correct deficiencies in assessment by units of government."

In *People ex rel. Lindheimer v. Gaylord Building Corp.* (1938), 369 Ill. 371, 16 N.E.2d 901, the Chicago Park District passed its tax levy ordinance on January 15, 1935, for that year. Subsequently, the legislature amended section 19 to authorize a rate for corporate purposes in the year 1935 sufficient to produce the sum of $9,000,000 and empowered the district to adopt a supplementary tax levy up to an amount which, when added to the amount therefore legally levied, would not exceed that sum. The district, on July 23, 1935, adopted a supplemental appropriation ordinance for the sum of $1,800,000. On the issue of the constitutionality of the amendment to section 19, the supreme court, after considering several constitutional objections, ruled that the amendment was a valid exercise of legislative power, and the levy ordinance adopted thereunder was likewise valid. The taxpayer argues that in *Gaylord* the original levy was lawful, whereas in the instant case the original levy was lawful at the .47 rate and unlawful to the extent of the excess of .03 and that the 1974 amendment did not validate an illegal levy at the additional rate of .03.

In *People ex rel. Price v. Wisconsin Central R.R. Co.* (1905), 219 Ill. 94, 76 N.E. 80, the county board of Lake County in 1904 attempted to levy a county tax of 75 cents on each $100 of taxable property according to its assessed valuation, and did not specify the particular purpose for which the tax was levied. Such a tax was not authorized by the State legislature. Later, in 1905, the legislature passed an act for the purpose of curing the defect in levies which existed in this and

other like cases. The act was in force from and after its passage, and the only question was whether it cured the defect. The supreme court held that it did and ruled that

"[t]here is no prohibition in our constitution against the passage of retroactive statutes, and they are not invalid if they do not impair vested rights or come in conflict with some provision of the constitution. The general rule is, that where there is no constitutional prohibition the legislature may validate, by a curative act, any proceedings which they might have authorized in advance." 219 Ill. 94, 96, 76 N.E. 80, 80; accord, *Cowgill v. Long* (1853), 15 Ill. 202.

The district argues that when it became apparent to the legislature because of declining real estate values that the 1974 equalized assessed valuation (which could not be known until midyear 1975) would apparently be less than the previous valuation, it passed a curative act, effective October 1, 1974, in order to overcome the deficiency. Had it not done so, there would have been a shortfall in the amount needed to operate the district and it would have been necessary to impose an additional tax.

■ It is clear that the legislature could have authorized such a levy as made, while the taxes remained uncollected and before paid, discharged or otherwise released (*People ex rel. Price v. Wisconsin Central R.R. Co.* (1905), 219 Ill. 94, 76 N.E. 80; *Cowgill v. Long* (1853), 15 Ill. 202), and the taxpayer has not cited any constitutional prohibition to such authority. The conclusion that the levy at a rate in excess of .47 and the rate in excess of .04 is void *ab initio* is unsupported by any facts in the record or cases cited by the taxpayer. The taxpayer's conclusions are not persuasive, and are rejected, and the reliance on *People ex rel. Kjellquist v. Chicago, Milwaukee & St. Paul Ry. Co.* (1926), 321 Ill. 499, 152 N.E. 560, is misplaced. The burden was upon the taxpayer to sustain the objections to the 1974 tax levy, and the challenge in the instant case has not been met. *People ex rel. Gill v. Schweitzer* (1937) 366 Ill. 568, 10 N.E.2d 337.

After a careful examination of the record, we find that the decision of the trial court was correct. Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and GOLDBERG, J., concur.