**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230575-U

Order filed December 9, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-BC-4, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | Appeal No. 3-23-0575 Circuit No. 18-CH-603 |
| SYLVIA MARTON; MIGUEL MARTON; UNKNOWN OWNERS and NON RECORD CLAIMANTS, | ) ) ) ) ) ) | |
| Defendants | ) ) ) | Honorable Theodore J. Jarz, |
| (Miguel Marton, Defendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The circuit court did not err in granting a judgment of foreclosure and sale. Affirmed.

¶ 2 Defendant Miguel Marton appeals the circuit court's orders (1) entering a judgment of foreclosure and sale in favor of plaintiff U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-BC-4 (U.S. Bank), (2) confirming a judicial sale of the subject property, and (3) denying Marton's motion to vacate the order confirming the sale. He argues U.S. Bank did not follow its own loss mitigation guidelines and he should have been allowed a loan modification. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 In 2005, Marton and his wife Sylvia[1] took title to the subject property in Plainfield as tenants by the entirety via a trustee's deed. In 2007, the Martons took out a mortgage loan for $270,000.00, with a 7.788% adjustable interest rate. The Martons defaulted. In 2010, the loan was modified for the first time. The new principal balance was $284,536.91, with a 7.163% fixed interest rate. The Martons again defaulted. In December 2016, the loan was modified for a second time. The new principal balance was $442,270.06, of which $278,870.06 was deferred. The non-deferred principal had a 2% fixed interest rate. The Martons defaulted after making five payments.

¶ 5 In April 2018, U.S. Bank filed a complaint to foreclose the mortgage, alleging an unpaid principal balance of $440,929.56. Thereafter, Marton requested another loan modification from U.S. Bank's servicer. In August 2018, the servicer denied Marton's request. The servicer reviewed Marton's eligibility for two modification programs. He was not eligible for the "Helping Homeowners Modification" because the account was more than 90 days delinquent. Marton was also not eligible for a "Streamline Modification," because "Due to [the servicer's] modification

_____

[1] Sylvia is deceased and is not a party to this appeal.

program rules, the lowest modification payment [it could] provide [would] exceed the current mortgage payment by more than 25%." Marton did not appeal this denial.

¶ 6        In July 2019, Marton answered U.S. Bank's complaint. He raised no affirmative defenses.

¶ 7        Marton again applied for a loan modification. In July 2019, the servicer denied the application for the same reasons as it did in August 2018. Marton appealed the denial, and the servicer denied the appeal. The servicer explained in its letter that Marton's account was reviewed for a streamline modification, in which the servicer "tr[ies] to bring down the monthly mortgage payment to lesser than 20.00%. If this is not possible, [the servicer] approve[s] the loan modification, even if the monthly mortgage payment is raised by 25%." According to the servicer, Marton's account was ineligible for a streamline modification because in performing the calculation of the potential modification, the servicer could not achieve a 25% payment reduction. Based on the calculation, Marton's monthly mortgage payment would increase by 84%.

¶ 8        In December 2019, the servicer sent Marton another letter similar to its September 2019 letter denying his appeal. According to the servicer, in July 2019, the account was ineligible for modification assistance under the streamline modification program because in performing the calculation of a potential modification, the servicer could not achieve a 25% payment reduction. Marton's monthly mortgage payment would increase by 84%.

¶ 9        In January 2021, U.S. Bank's counsel emailed Marton's counsel to convey a settlement offer. Attached to the email was an account modification approval notice dated December 24, 2020.

¶ 10       In July 2021, U.S. Bank filed a loss mitigation affidavit, completed by Richard Schwiner. According to Schwiner, Marton did not qualify for an in-house modification, but he was conditionally approved for a short sale or a deed in lieu of foreclosure.

3

¶ 11    In July 2022, U.S. Bank moved for summary judgment and for a judgment of foreclosure. According to U.S. Bank, there was no genuine issue of material fact as to (1) its capacity to foreclose, (2) Marton's default arising from his failure to repay the note according to its terms, (3) its contractual right to foreclose on the default, and (4) the amounts due and owing. U.S. Bank argued there was nothing in Illinois Supreme Court Rule 114 that compelled a specific type of loss mitigation be offered to a borrower, and it was only required to comply with the applicable loss mitigation requirements. Marton filed a response and attached the affidavit of his expert loss mitigation consultant, Roberto Rivera. According to Rivera, Marton's 2019 loan modification application was improperly denied for the stated reason that "[the servicer] could not achieve a 25% payment reduction," because this was not the standard set forth in the servicer's loss mitigation guidelines. He further opined U.S. Bank used the incorrect interest rate and property value in its calculation, U.S. Bank allows for exceptions to its guidelines, and it could have made an exception for Marton, as demonstrated by the December 24 modification approval. But Rivera also indicated it appeared the application was accurately denied to the extent the payment increased more than 25%, per the servicer's loss mitigation guidelines.

¶ 12    The circuit court granted U.S. Bank's motion for summary judgment and entered a judgment of foreclosure and sale. The circuit court determined Marton's answer as pleaded, which lacked sufficient supporting documents, did not raise a genuine issue of material fact sufficient to preclude summary judgment.

¶ 13    U.S. Bank purchased the property at the judicial sale. The circuit court confirmed the sale.

¶ 14    Marton moved to vacate the order confirming the sale. He argued the court misapplied the law because U.S. Bank's servicer utilized an improper standard when it denied his streamline loan modification. The circuit court denied the motion to vacate. Marton appeals.

4

¶ 15                              II. ANALYSIS

¶ 16        On appeal, Marton argues the circuit court erred when it (1) entered the judgment of foreclosure, (2) confirmed the sale, and (3) denied his motion to vacate.

¶ 17                           A. Summary Judgment

¶ 18        Marton argues the court erred in granting summary judgment because whether U.S. Bank followed its own modification policies is an issue of material fact, and Rivera's report draws a different conclusion than Schwiner's loss mitigation affidavit. U.S. Bank insists Marton's argument is legally unfounded and stretches Illinois Supreme Court Rule 114 (eff. Jan. 1, 2018) beyond its plain language and intended meaning. Moreover, U.S. Bank argues the loan could not be modified within the guidelines because the loan was modified in 2016 with favorable payment terms for Marton.

¶ 19        Summary judgment will be granted if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). Our sole task is to determine whether the evidence presented was sufficient to create an issue of material fact. *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 37. We review the circuit court's decision to grant a motion for summary judgment *de novo*. *Shaw v. U.S. Financial Life Insurance Co.*, 2022 IL App (1st) 211533, ¶ 26.

¶ 20        According to Rule 114, "Plaintiff must, prior to moving for a judgment of foreclosure, comply with the requirements of any loss mitigation program which applies to the subject mortgage loan." Ill. S. Ct. R. 114(a) (eff. Jan. 1, 2018). "The court may, either *sua sponte* or upon motion of a mortgagor, stay the proceedings or deny entry of a foreclosure judgment if Plaintiff fails to comply with the requirements of this rule." Ill. S. Ct. R. 114(d) (eff. Jan. 1, 2018). The

5

purpose of the rule is to prevent a judgment of foreclosure where the plaintiff does not comply with applicable loss mitigation requirements. Ill. S. Ct. R. 114, Committee Comments (adopted April 8, 2013). "[W]hen interpreting a supreme court rule, we must ascertain and give effect to the intent of the supreme court for promulgating the rule." *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 35. "The most reliable indicator of the court's intent is the rule's actual language, which should be given its plain and ordinary meaning." *Id.* The rule's use of the word "may" in paragraph (d) "demonstrates that there is some room for judicial discretion regarding the level of strictness of its enforcement[.]" *Id.* ¶ 37.

¶ 21      Here, Rivera's report was not sufficient to create a material issue of fact. Although Rivera concluded Marton's loan was improperly denied because a 25% payment reduction was not the servicer's standard, he conceded the application was properly denied because Marton's payment would have increased by more than 25%. In its September and December 2019 letters, the servicer explained the criteria for a streamline modification. The servicer "tr[ies] to bring down the monthly mortgage payment to lesser than 20.00%. If this is not possible, [the servicer] approve[s] the loan modification, even if the monthly mortgage payment is raised by 25%." A 25% reduction in the monthly payment was not the standard U.S. Bank's servicer was required to satisfy in order to approve Marton for a loan modification. However, the servicer also informed Marton in its denials that his mortgage payments would actually increase by 84%, well outside the guideline for a streamline modification. Thus, Marton was not eligible for the streamline modification or any of the servicer's other loan modification programs.

¶ 22      Rule 114 only required U.S. Bank to comply with any loss mitigation program that applied to the subject loan. The servicer reviewed Marton's account. It properly determined none of U.S.

Bank's loss mitigation programs applied to the subject loan. Rule 114 did not require any other action.

¶ 23    Moreover, the circuit court is not required to deny the entry of foreclosure where the bank does not comply with loss mitigation requirements. See *Wells Fargo Bank, N.A. v. Smith*, 2019 IL App (1st) 172963, ¶ 21 (The term "may" is permissive, and so the circuit court is not required to stay proceedings or deny the entry of foreclosure.). Even so, the circuit court here did not find U.S. Bank failed to follow its own internal guidelines. A contrary finding was not supported by the record. There was no genuine issue of material fact, and the circuit court did not err when it granted summary judgment to U.S. Bank.

¶ 24                    B. Order Confirming Sale and Order of Possession

¶ 25    Marton next claims the circuit court erred when it confirmed the property's sale, given the underlying disputed issue of material fact, that is, whether U.S. Bank followed its own modification guidelines. He argues that despite the court's apparent agreement with Marton's expert, the court somehow believed the loan servicer's policy was subject to change at any point. In support, he cites the transcript from the hearing on U.S. Bank's motion to confirm the sale:

> "THE COURT: If I recall correctly *** it seemed to me that [defense counsel's] expert, you know—and I can appreciate how he comes to the conclusion, but I don't know, there is nothing in my mind that says in terms of following procedures that they've adopted that, you know, as long as they have given an appropriate consideration, a policy is kind of subject to change at any point in time. It may not be binding across all kinds of activity. Just the fact that he feels that they didn't follow their own procedures was not sufficient in my mind to create any material issue of fact with regards to certainly any issues as to default and what not.

7

> But in terms of following through with appropriate loss mitigation programs that should be afforded, I think they were given plenty of opportunity."

¶ 26    We review whether an order confirming the sale was proper for an abuse of discretion. *Deutsche Bank National Trust Co. as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2004-WMC2 v. Cortez*, 2020 IL App (1st) 192234, ¶ 17. "The circuit court abuses its discretion if it committed an error of law or where no reasonable person would take the view adopted by the court." *Id.* "The party opposing the foreclosure sale bears the burden of proving that sufficient grounds exist to disapprove the sale." *Id.*

¶ 27    We disagree with defendant's interpretation of the circuit court's statement. Based on the quoted language, the circuit court did not agree with the expert's analysis. Regardless, as we have explained, there was no underlying disputed issue of material fact, and U.S. Bank followed its modification guidelines. Because there is no disputed issue that would make the judgment of foreclosure and sale improper, the order confirming sale and order of possession likewise cannot be found improper based on the same nonexistent disputed issue.

¶ 28                        C. Marton's Motion to Vacate

¶ 29    Marton provides no argument explaining how the circuit court erred in denying his motion to vacate the order confirming sale and order of possession. Instead, he incorporates his previous arguments by reference. Because the circuit court did not err in granting the order confirming sale and order of possession, it likewise did not err by denying Marton's motion to vacate.

¶ 30                            III. CONCLUSION

¶ 31    The judgment of the circuit court of Will County is affirmed.

¶ 32    Affirmed.